# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1310

_____

|  |  |  |
|---|---|---|
| United States of America, | * * * | |
| Appellee, | * * | Appeal from the United States District Court for the |
| v. | * * | Northern District of Iowa. |
| | * * | [PUBLISHED] |
| Cedric Jarreau Hawkins, | * * | |
| Appellant. | * | |

_____

Submitted: September 22, 2008
Filed: December 4, 2008

_____

Before RILEY, HANSEN, and MELLOY, Circuit Judges.

_____

HANSEN, Circuit Judge.

Cedric Jarreau Hawkins was convicted on one count of distribution of cocaine base (crack cocaine) within 1000 feet of a school after having been previously convicted of two felony drug offenses. He appeals his conviction and the mandatory life sentence imposed by the district court.[1] We affirm.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

# I.

At trial, the evidence showed that on August 10, 2006, a government cooperating witness, Tammy Seltrecht, telephoned Themous Hawkins (Themous) to buy crack cocaine from him. Themous, unable himself to meet her that day, suggested that she buy the crack from his cousin, Cedric Hawkins (Hawkins), the defendant. Themous told Hawkins to expect a call from Seltrecht. She called Hawkins as instructed, and he agreed to meet her outside an apartment building at 910 33rd Avenue in Marion, Iowa. Prior to the arranged meeting, a law enforcement search of Seltrecht and her vehicle produced no controlled substances. The officers then provided her with $350 for the purchase, placed a recording device in her purse, and kept her within their surveillance until she returned.

Seltrecht picked up Hawkins at the prearranged location. After he entered the car, she turned off of 33rd Avenue and drove south four blocks on 9th Street. She turned left on 29th Avenue for one block, turned left again, and headed back on 10th Street past the Linn-Mar High School. Again at 33rd Avenue, she returned Hawkins to the apartment building. Seltrecht testified that during this short drive, she handed Hawkins the money, he handed her the crack cocaine, and he received a telephone call from Themous on Seltrecht's cell phone. The recording of Seltrecht's meeting with Hawkins reveals that neither of them made reference to the crack transaction that occurred. Officers followed Seltrecht back to their office where she provided them with 5.4 grams of crack cocaine that she testified Hawkins had handed her in exchange for the money. A final search of Seltrecht and her vehicle produced no other controlled substances or money.

Hawkins was charged with one count of distributing cocaine base within 1000 feet of a school,[2] in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 860, after having been convicted of two or more felony drug offenses, 21 U.S.C. § 851. At trial, Hawkins' attorney attacked the credibility of the cooperating witness and objected to the Government's admission of two prior felony drug distribution convictions on his record. He further objected to the prosecutor's closing argument on grounds that the Government was arguing facts that were not in evidence. The district court overruled his objections, denied his motions for acquittal and for a new trial, and imposed a mandatory life sentence. Hawkins appeals.

## II.

### A. Rule 404(b) Evidence

We review the admission of Rule 404(b) evidence for an abuse of discretion. United States v. Anthony, 537 F.3d 863, 865 (8th Cir.), petition for cert. filed, (U.S. Nov. 6, 2008) (No. 08-7205). We construe Rule 404(b) broadly as a rule of inclusion, "and we will reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." Id. (internal marks omitted). Evidence of prior bad acts is admissible under Rule 404(b) to show proof of intent, knowledge, or motive, among other things, when the bad acts are relevant, "similar in kind and not overly remote in time" to the charged crime, sufficiently supported by evidence, and the potential prejudice of the bad acts evidence does not substantially outweigh its probative value. United States v. Gaddy, 532 F.3d 783, 789 (8th Cir.) (internal marks omitted), cert. denied, 2008 WL 4580035 (U.S. Nov. 10, 2008) (No. 08-6755). Prior felony drug convictions are relevant to show intent and knowledge in a drug prosecution when a defendant makes a general

---

[2]Linn-Mar High School is located at 3111 10th Street in Marion, Iowa, and during the drive on August 10, 2006, Seltrecht and Hawkins were at all times within 1000 feet of the school.

denial defense, which necessarily places the defendant's state of mind at issue. Anthony, 537 F.3d at 865-66.

At trial, the Government was permitted, after a hearing, to introduce two prior felony drug distribution convictions. Both convictions were entered on July 12, 2000. Hawkins argues that these convictions were neither similar nor close in time to the crime charged because the convictions were entered over six years prior to the charged offense, and the one conviction involved a different drug, heroin. First, we note that "[a] prior offense need not involve the same illegal drug as the charged offense" in order to be relevant and similar. United States v. Cook, 454 F.3d 938, 941 (8th Cir. 2006). Thus, it is of no consequence to this analysis that one of Hawkins' prior distribution convictions involved heroin rather than crack cocaine.

Second, Hawkins' prior convictions are not so remote as to be inadmissible. Hawkins cites Cook, a distribution prosecution in which we found no abuse of discretion in the exclusion of a six-year-old prior possession conviction. Id. We noted, however, that the possession conviction was not only six years remote but also "functionally dissimilar to the charged distribution offense." Id. In contrast, Hawkins' prior convictions, while six years remote, involved crimes of distribution similar to the current charge. We in fact confirmed in Cook that even an eight-year-old prior conviction can be relevant and not overly remote if it is similar to the crime charged. Id. at 942; see also Gaddy, 532 F.3d at 789 (holding prior convictions of four, ten and eleven years old were not so remote as to be inadmissible). We conclude that the probative value of Hawkins' prior six-year-old distribution convictions was not outweighed by a risk of unfair prejudice, see Gaddy, 532 F.3d at 789, and thus, the district court did not abuse its abundant discretion by admitting Hawkins' prior felony drug distribution convictions pursuant to Rule 404(b).

-4-

B.  Prosecutor's Closing Argument

Hawkins argues that the district court erred by overruling his objection to the prosecutor's reference to evidence outside the record during the closing argument. "Prosecutorial remarks during closing argument can be grounds for reversing a defendant's conviction if they were improper and prejudicially affected the defendant's substantial rights so as to deprive [him] of a fair trial." United States v. Boesen, 541 F.3d 838, 845 (8th Cir. 2008) (internal marks omitted). "A prosecutor must limit the closing argument to the evidence and the reasonable inferences that may be drawn from it." United States v. Eagle, 515 F.3d 794, 805 (8th Cir. 2008). We evaluate comments in the context of the entire closing argument and the evidence introduced at trial. United States v. Gardner, 396 F.3d 987, 989 (8th Cir.), cert. denied, 546 U.S. 866 (2005).

Hawkins argues that it was prosecutorial misconduct for the prosecutor to refer to "Craig," the prosecutor's barber, during closing argument because this "evidence" was not in the record. In the closing argument, when the prosecutor was discussing the issue of credibility, he referenced his barber as a great guy, someone who was hardworking and as "honest as the day is long." (Closing Arg. Tr. at 13.) He explained that while the Government would prefer to present a witness like Craig, citizens like Craig are not the type of people who have knowledge of drug trafficking activities. This reference was not improper. The key issue in the trial was whether the jury should believe the Government's cooperating witness. The defense had vigorously attacked her credibility by exposing her drug use and criminal background, and a special agent had acknowledged on cross-examination that the government utilizes people who have been involved in illegal activity.

The prosecutor's closing-argument reference to Craig was not an attempt to present evidence outside the record. Craig, the barber, merely represented the quintessential credible witness whom the prosecutor contrasted with the type of

person who most often has knowledge of drug trafficking crimes. The prosecutor used Craig to illustrate why the jurors should not expect a witness involved in drug deals to have an impeccable background, and this illustration helped to shape the permissible inference that the cooperating witness in this case could be credible. The reference was neither inflammatory nor misleading, and we see no error in overruling this objection. See, e.g., United States v. Mullins, 446 F.3d 750, 759 (8th Cir.) (noting that comments likely to inflame bias are improper but that colorful language is permitted as long as it does not stray from the evidence and reasonable inferences from it), cert. denied, 127 S. Ct. 284 (2006); United States v. Walker, 613 F.2d 1349, 1355 (5th Cir.) (permitting the government to "illustrate[] graphically a permissible inference the jury could make from the testimony in evidence"), cert. denied, 446 U.S. 944 (1980).

## C. Motion for Judgment of Acquittal or New Trial

Hawkins argues that he was entitled to a judgment of acquittal or a new trial on the ground that the evidence as a whole was insufficient to sustain the verdict. We review the denial of a motion for judgment of acquittal de novo, viewing the evidence in the light most favorable to the verdict. United States v. Samuels, 543 F.3d 1013, 1019 (8th Cir. 2008). The Government relied heavily on Seltrecht's testimony concerning the drug transaction. Hawkins argues that the evidence is insufficient because the transaction took place in Seltrecht's car, the officers could not observe any transaction, Seltrecht was only subjected to a strip search and not to a vaginal search prior to the transaction, and her car could have been subjected to a more complete search. Additionally, Hawkins points out that no drugs were found in the apartment where he was staying. These issues all go to the weight and credibility of the evidence, which we must view in the light most favorable to the verdict. "[A]s this Court has said many times, questions concerning the credibility of witnesses, where their testimony is not incredible on its face, are for the jury to decide." Id. Our review of the record convinces us that the evidence is sufficient to permit a rational jury to

find "the essential elements of the crime beyond a reasonable doubt." Id. (internal marks omitted).

A district court considering a motion for new trial, unlike a motion for judgment of acquittal, "is permitted to weigh the evidence and judge witness credibility for itself in determining if there may have been a miscarriage of justice such that a new trial is required." Id. Yet, "[a] motion for new trial based upon the weight of the evidence is disfavored," and "the authority to grant a new trial should be exercised sparingly and with caution." United States v. Davis, 534 F.3d 903, 912 (8th Cir. 2008) (internal marks omitted). We review for an abuse of discretion the district court's denial of a motion for a new trial. Boesen, 541 F.3d at 844-45.

The argument that Seltrecht's testimony was not credible "is no more compelling on the issue of a new trial than it was on the issue of judgment of acquittal." Samuels, 543 F.3d at 1019-20. The defense took full advantage of the opportunity to discredit Seltrecht's testimony, and the jury was free to believe all, part, or none of it. The officers provided objective context and controls for the transaction by searching Seltrecht and her vehicle and keeping her under constant surveillance during the two- or three-mile drive to the meeting place and the four-block circle she drove with Hawkins. The district court did not find Seltrecht's testimony to be wholly incredible, and despite the credibility problems that Hawkins cites, the evidence is not "so lacking in probative force that a new trial is warranted." Davis, 534 F.3d at 913. After fully reviewing the record, we see no miscarriage of justice requiring a new trial, and no abuse of discretion in the district court's denial of the motion.

## D. Sentencing

Hawkins objected at sentencing to the imposition of a mandatory life sentence based upon his two or more prior felony drug convictions. We review de novo the district court's interpretation of the statute and conclusion that Hawkins' prior

convictions were predicate offenses under the statute. United States v. McAtee, 481 F.3d 1099, 1105 (8th Cir. 2007). Title 21 U.S.C. § 841(b)(1)(A) provides in relevant part that a person convicted of distributing controlled substances near a school in violation of 21 U.S.C. § 860 "after two or more prior convictions for a felony drug offense . . . shall be sentenced to a mandatory term of life imprisonment without release." The Government gave proper notice of its intent to enhance Hawkins' sentence in this manner, noticing three prior Illinois state-court convictions for felony drug offenses (two felony-grade drug distribution convictions and one felony-grade drug possession conviction), and the district court found that, out of the three, there were two qualifying prior convictions that required the imposition of the mandatory life sentence. While Hawkins contends that he did not commit the prior drug offenses as factually charged, arguing that he only possessed the drugs, he admits that the convictions exist and are otherwise valid.

Hawkins argues that his state felony convictions should be considered as one criminal episode because the drug amounts were small, the offenses were committed close together in time, the offenses all took place in Chicago, and the convictions were entered on the same day. That the convictions were all entered on the same day does not, by itself, alter their character as separate felony drug offenses. What matters for purposes of the mandatory life sentence is that there are at least two "prior convictions" involving different criminal episodes. See United States v. Cook, 356 F.3d 913, 916 (8th Cir. 2004). The district court found that the two drug distribution convictions were one criminal episode because they both occurred on the same day and in the same location. The felony possession charge, however, occurred five months earlier and was separated from the later offenses by its attending arrest, and therefore, it cannot be considered part of the same criminal episode as the later-occurring distribution offenses. See United States v. Gray, 152 F.3d 816, 821-22 (8th Cir. 1998) (holding that drug transactions separated by one day and not contingent upon each other were separate criminal episodes), cert. denied, 525 U.S. 1169 (1999).

Additionally, there is no basis for concluding that the convictions comprise a single episode simply because they all involved small amounts of controlled substances and all occurred in Chicago. See Samuels, 543 F.3d at 1021.

Finally, Hawkins argues that his state felony drug possession conviction should not count as a prior drug felony for purposes of the mandatory life sentence because it would not have been a felony under federal law, citing Lopez v. Gonzales, 549 U.S. 47, 53 (2006). Our court has recently rejected this argument. See Samuels, 543 F.3d at 1021. The Lopez case is inapplicable because the Supreme Court was discussing statutory language in the immigration removal context in order to determine whether the alien had been convicted of "a drug trafficking crime," 8 U.S.C. § 1101(a)(43)(B), which in turn is defined as "any felony punishable under the Controlled Substances Act," 18 U.S.C. § 924(c)(2). Lopez, 549 U.S. at 52-53. The Court held "that a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under *that* federal law." Id. at 60 (emphasis added).

By contrast, the statutory language at issue in this instance has nothing to do with immigration and requires a mandatory life sentence after two previous convictions of "a felony drug offense." 21 U.S.C. § 841(b)(1)(A). The term "felony drug offense" is broadly defined to include, in relevant part, offenses "'punishable by imprisonment for more than one year' under any federal *or state law*." Samuels, 543 F.3d at 1021 (quoting 21 U.S.C. § 802(44)). For purposes of applying the mandatory sentencing enhancements of § 841(b)(1), the term "felony drug offense" "is defined exclusively by § 802(44)." Burgess v. United States, 128 S. Ct. 1572, 1575 (2008). It is sufficient, then, that Hawkins' prior possession conviction fits within this definition–it is a state law felony drug offense punishable by imprisonment for more than one year. See 720 Ill. Comp. Stat. 570/402(c) (2000) (stating any person in possession of less than 15 grams of cocaine is guilty of a Class 4 felony); 730 Ill.

Comp. Stat. 5/5-8-1(a)(7) (2000) (stating that the sentence for a Class 4 felony is not less than 1 year and not more than 3 years).

Having properly found that Hawkins had at least two qualifying prior convictions for a felony drug offense, the district court was required to impose the statutorily mandated life sentence. We see no sentencing error, and the reasonableness review of United States v. Booker, 543 U.S. 220 (2005), does not apply to statutorily mandated sentences. See United States v. Gregg, 451 F.3d 930, 937 (8th Cir. 2006). Congress, possessed with the power to fix a particular sentence for a particular crime and to control a judge's sentencing discretion, see Mistretta v. United States, 488 U.S. 361, 364 (1989), has decreed a life sentence must be imposed.

While it is not our practice to consider pro se arguments when the defendant is represented by counsel, see United States v. Johnson, 470 F.3d 1234, 1239-40 (8th Cir. 2006), cert. denied, 128 S. Ct. 522 (2007), we have considered the pro se arguments that Hawkins' counsel made on his behalf at oral argument, and we find them to be without merit.

Accordingly, we affirm the judgment of the district court.

_____