# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1568
_____

United States of America

*Plaintiff - Appellee*

v.

Fraenchot Deon Banks

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: October 19, 2012
Filed: February 14, 2013

_____

Before RILEY, Chief Judge, BEAM and COLLOTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Fraenchot Deon Banks was convicted of conspiracy to possess with intent to distribute and distribute controlled substances in violation of 21 U.S.C. § 846. On appeal, Banks argues that the district court[1] erred in denying his motion to dismiss, his

_____

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota.

motion for a judgment of acquittal, his motion to suppress, and that the district court plainly erred in instructing the jury. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

On December 16, 2010, Banks was arrested for his involvement in a controlled sale of cocaine ("reversal sale") arranged by Minnesota law enforcement officers. Prior to the reversal sale, on December 10, 2010, North Dakota law enforcement officials executed a search warrant at the home of Scott Razmyslowski and Joshua Hulst, two of the indicted co-conspirators, and found various drugs in both Razmyslowski's and Hulst's bedrooms. Razmyslowski, cooperating with law enforcement personnel, identified Isidoro Alvarado as one of his suppliers. At the same time, law enforcement agents in Minnesota were investigating Alvarado and his large cocaine operation in the St. Paul, Minnesota, area. Based on information received from a confidential informant, the Minnesota officers became aware that Alvarado was looking to purchase a large amount of cocaine. Armed with this information, the police organized the reversal sale. The reversal sale took place at a Super 8 Hotel in St. Paul. The confidential informant and Officer Aguirre, acting undercover, planned to sell 3 to 4 kilograms of cocaine to Alvarado in one hotel room, while an arrest team of officers waited in a hotel room across the hall. The arresting officers observed the reversal sale via a live video feed, which also recorded the reversal sale.

Alvarado arrived at the hotel in a vehicle driven by Banks. Both Banks and Alvarado entered the hotel room to meet the confidential informant and undercover agent Aguirre. During the reversal sale, the confidential informant and Alvarado arranged for Alvarado to purchase 2 kilograms of cocaine for $42,000 and the confidential informant would "front" 1 additional kilogram to Alvarado. Banks observed the cocaine, checking the quality and texture of the drugs. After observing

the cocaine, Banks said, "I can work with that." Then, Banks and Alvarado left the hotel to retrieve the cash needed to purchase the cocaine. Alvarado returned to the Super 8, this time accompanied by Banks and Manuel Cuevas-Alonso. Alvarado went into the hotel room and purchased the cocaine, while Banks and Cuevas-Alonso waited in the vehicle. Once the money was exchanged for the cocaine, all three individuals were arrested. After the arrests were made, the Minnesota officers, with the help of Homeland Security agents, connected the activities in Minnesota with Razmyslowski's arrest in North Dakota.

Banks, along with Cuevas-Alonso, Alvarado, Razmyslowski, Hulst, and one other individual, was indicted for conspiracy to possess with intent to distribute and distribute controlled substances in the United States District Court for the District of North Dakota. The other co-conspirators pled guilty prior to trial. The indictment alleged the conspiracy existed from around January 2009 until the date of the indictment, February 2011.

Prior to trial, Banks filed a motion to dismiss due to lack of jurisdiction, essentially arguing that venue was improper. The district court denied the motion, reasoning that there was sufficient evidence for a reasonable jury to find that an overt act in furtherance of the conspiracy took place in North Dakota. Banks also filed a motion to suppress evidence of a prior conviction. Banks asserted that his October 3, 2000, conviction for possession of marijuana should be excluded because its prejudicial effect outweighed its probative value. Initially, on November 8, 2011, the district court granted Banks' motion. At the close of its case, however, the government challenged the court's order regarding the suppression, noting that it illustrated Banks' knowledge and intent to join a conspiracy. Because Banks presented a general denial defense, the district court departed from its original order and admitted the evidence of the previous drug conviction. The court instructed the jury that the evidence could be considered solely for the purpose of demonstrating

-3-

Banks' knowledge of the existence of the conspiracy and his intent to join the particular conspiracy charged.

At trial, the jury heard witness testimony establishing the extent of the conspiracy. Razmyslowski testified that, beginning in the fall of 2010, Alvarado began supplying him with cocaine and marijuana. Cuevas-Alonso testified that he started dealing drugs with Alvarado in November of 2010. Cuevas-Alonso testified that on multiple occasions he purchased large amounts of cocaine for Banks. Also, Cuevas-Alonso testified that around May or June of 2010, Alvarado, Banks and another individual traveled to Texas to receive 10 kilograms of cocaine. The government also presented the jury with the video recording of the reversal sale and audio of Banks' post-arrest interview.

The jury found Banks guilty of participating in the conspiracy to possess with intent to distribute in excess of 5,000 grams of a mixture and substance containing a detectable amount of cocaine and aiding and abetting the charged conspiracy. Banks moved for judgment of acquittal. The district court denied the motion and sentenced Banks to the mandatory minimum of 240 months. Banks appeals.

## II.    DISCUSSION

### A.    Motion to Dismiss

#### 1.    Improper Venue

Banks argues that the district court first erred in denying his motion to dismiss because venue was improper in North Dakota.[2] We review the district court's denial

_____

[2]Banks phrases the argument in terms of lack of jurisdiction based on improper venue. We limit our discussion to venue because "the 'constitutional and statutory venue provisions . . . are not restrictions on the court's jurisdiction.'" United States v.

-4-

of a motion to dismiss for improper venue de novo. United States v. Hull, 419 F.3d 762, 768 (8th Cir. 2005). "Proper venue is required by Article III, § 2 of the United States Constitution and by the Sixth Amendment, as well as Rule 18 of the Federal Rules of Criminal Procedure." United States v. Morales, 445 F.3d 1081, 1084 (8th Cir. 2006) (quotation omitted). A federal crime may be prosecuted in any district in which such offense began, continued, or was completed. Hull, 419 F.3d at 768. Specifically, "[i]n a conspiracy case, venue is proper 'in any district in which any act in furtherance of the conspiracy was committed by any of the conspirators even though some of them were never physically present there.'" Id. (quoting United States v. Fahnbulleh, 748 F.2d 473, 477 (8th Cir. 1984)). "Where the relevant facts are disputed, venue is a question of fact for the jury to decide." United States v. Nguyen, 608 F.3d 368, 374 (8th Cir. 2010).

Based upon the evidence presented at Banks' trial, a reasonable jury could conclude an overt act in furtherance of the conspiracy took place in North Dakota. Morales, 445 F.3d at 1084. The jury was instructed properly as to venue and the evidence indicated that the drug distribution conspiracy, of which Banks was a member, occurred in both North Dakota and Minnesota. Razmyslowski testified that he purchased drugs for resale from Alvarado in Minnesota. And, in at least one instance, testimony established that Alvarado traveled to North Dakota in furtherance of the conspiracy. Cuevas-Alonso also testified that he dealt drugs with Alvarado and he accompanied Alvarado to North Dakota. During the execution of the search warrant of Razmyslowski's North Dakota house, numerous drugs were recovered, some of which were purchased from Alvarado. It was estimated that Razmyslowski and his roommate, Hulst, had purchased at least 2 kilograms of cocaine and 30 pounds of marijuana from Alvarado. Cuevas-Alonso also testified that on multiple occasions he purchased large amounts of cocaine for Banks. It is immaterial that Banks was not

Cole, 262 F.3d 704, 709 n.5 (8th Cir. 2001) (quoting United States v. Crawford, 115 F.3d 1397, 1403 n.12 (8th Cir. 1997)).

present in North Dakota. Hull, 419 F.3d at 768 (noting that venue is proper in any district where an act in furtherance of the conspiracy was committed even though some of the conspirators were never present there). Further, the jury was given a multiple conspiracy instruction, which it rejected, finding one conspiracy that occurred in North Dakota and Minnesota. In light of the evidence presented it was reasonable for the jury to concluded that the events that took place in Minnesota involving Banks were connected, through Cuevas-Alonso and Alvarado, to the events in North Datoka. A reasonable jury could conclude that an overt act in furtherance of the single conspiracy, of which Banks was a member, occurred in North Dakota, making venue proper there.

### 2. Insufficient Indictment

Banks next asserts that the district court erred in denying his motion to dismiss the indictment because "he should not be held liable . . . for crimes committed prior to when he was alleged to have joined the conspiracy." We review the denial of a motion to dismiss the indictment de novo. United States v. Knutson, 680 F.3d 1021, 1023 (8th Cir. 2012) (per curiam). "An indictment is sufficient if it fairly informs the accused of the charges against him and allows him to plead double jeopardy as a bar to a future prosecution." United States v. Buchanan, 574 F.3d 554, 565 (8th Cir. 2009) (quotation omitted). Banks does not allege that the substance of the indictment was insufficient, rather he contends that he could not be held liable for crimes committed prior to the reversal sale (the date he alleges that he joined the conspiracy). This argument is flawed because it assumes that Banks was not a member of the conspiracy prior to the reversal sale, which is contrary to the evidence presented at trial. Regardless, the issue of whether Banks was a member of the alleged conspiracy is one for the jury to decide. United States v. Watts, 950 F.2d 508, 512 (8th Cir. 1991). The district court did not err in denying Banks' motion to dismiss the indictment.

**B.      Motion for Judgment of Acquittal Due To Insufficient Evidence**

Here, Banks asserts that the district court erred in denying his motion for judgment of acquittal because the evidence was insufficient to prove Banks knew of or intended to join the conspiracy. "We review de novo a district court's denial of a motion for judgment of acquittal." United States v. Cannon, 475 F.3d 1013, 1020 (8th Cir. 2007). Applying the same standard of review as we do to a sufficiency of the evidence challenge, "[w]e view the evidence in the light most favorable to the guilty verdict, granting all reasonable inferences that are supported by that evidence." United States v. Clark, 668 F.3d 568, 573 (8th Cir. 2012) (quotation omitted). To establish a drug conspiracy under 21 U.S.C. § 846, the government must prove "(1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." United States v. Slagg, 651 F.3d 832, 840 (8th Cir. 2011) (quotation omitted). The conviction may be based on direct evidence as well as circumstantial evidence. Clark, 668 F.3d at 573.

Banks cannot overcome this strict standard. Viewing the evidence in the light most favorable to the government, a reasonable minded jury could have found, beyond a reasonable doubt, that Banks knew of the conspiracy and intended to join the conspiracy. United States v. Surratt, 172 F.3d 559, 563-64 (8th Cir. 1999). "Once the existence of a conspiracy has been established, even slight evidence connecting a particular defendant to the conspiracy may constitute proof of the defendant's involvement in the scheme . . . ." United States v. Scott, 64 F.3d 377, 380 (8th Cir. 1995) (quotation omitted). Not only was Banks present at the reversal sale, he evaluated the quality of the cocaine, checking the texture of each kilogram. The undercover officer present during the reversal sale testified that Banks and Alvarado acted comfortable with one another and appeared to trust each other. Although Banks denied doing so in his post-arrest interview, Cuevas-Alonso testified that Banks contributed $29,000 to the total purchase price. Also, Cuevas-Alonso testified as to

Banks' involvement in the conspiracy prior to the reversal sale. On more than one occasion, Cuevas-Alonso sold Banks cocaine, once selling him 1 kilogram of cocaine and another time selling him 3 kilograms of cocaine. Moreover, Cuevas-Alonso testified Banks was involved in the conspiracy in the spring of 2010 when Banks, Alvarado and another individual traveled to Texas to purchase 10 kilograms of cocaine. Finally, the jury was given a multiple conspiracy instruction, which it rejected, finding Banks was a member of the alleged conspiracy. Viewing this evidence in the light most favorable to the government, a reasonable jury could have concluded that Banks had knowledge of and intended to join the alleged conspiracy. The district court properly denied Banks' motion for judgment of acquittal.

### C.     Motion to Suppress Evidence

Banks challenges the district court's admission of his prior conviction from 2000 for possession of marijuana. "We review the district court's admission of evidence of past crimes under [Federal Rule of Evidence] 404(b) for abuse of discretion, and we will not reverse unless the evidence 'clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts.'" United States v. Betterton, 417 F.3d 826, 831 (8th Cir. 2005) (quoting United States v. Williams, 308 F.3d 833, 837 (8th Cir. 2002)). "Evidence of prior bad acts is admissible under Rule 404(b) to show proof of intent, knowledge, or motive," United States v. Hawkins, 548 F.3d 1143, 1146 (8th Cir. 2008), as long as the prior bad act (1) is relevant to a material issue; (2) is similar in kind and not overly remote in time to the crime charged; (3) is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value, United States v. Gaddy, 532 F.3d 783, 789 (8th Cir. 2008).

Initially, the district court granted Banks' suppression motion, noting that the danger of unfair prejudice was great due to the lack of similarity and age of the conviction, and the probative value was low because it did not establish knowledge

or intent. At the conclusion of the trial, however, the government raised the evidentiary issue again, and the district court noted that because Banks advanced a general denial defense, the evidence of Banks' prior conviction was admissible to show his knowledge of the existence of the conspiracy and his intention to join the charged conspiracy. The district court did not abuse its discretion in changing its ruling at the close of evidence. Walzer v. St. Joseph State Hosp., 231 F.3d 1108, 1113 (8th Cir. 2000) ("Evidentiary rulings made by a trial court during motions in limine are preliminary and may change depending on what actually happens at trial.").

Likewise, the district court did not abuse its broad discretion in its reassessment of the evidence because the probative value of the evidence increased after Banks presented a general denial defense. "Prior felony drug convictions are relevant to show intent and knowledge in a drug prosecution when a defendant makes a general denial defense, which necessarily places the defendant's state of mind at issue." Hawkins, 548 F.3d at 1147. Banks does not challenge the court's classification of his defense as a general denial and fails to indicate what prejudice was created by the admission of the evidence. Here, the conviction is not too remote to be admissible. Gaddy, 532 F.3d at 788 (noting convictions four, ten, and eleven years old are not so remote as to be inadmissible). Further, the prior conviction is not so substantively dissimilar to the crime charged to preclude its admission. Hawkins, 548 F.3d at 1147 (noting the prior conviction need not involve the same illegal drug as the charged offense); United States v. Ironi, 525 F.3d 683, 687 (8th Cir. 2008) (noting a prior conviction for possession of a controlled substance is relevant to show knowledge and intent to commit a current charge of conspiracy to distribute drugs). Finally, any potential unfair prejudice was reduced by the court's limiting instruction, which instructed the jury to only consider the evidence to decide issues of knowledge and intent. Gaddy, 532 F.3d at 790. Accordingly, we find district court did not abuse its discretion by admitting evidence of Banks' prior conviction.

### D. Jury Instructions

Finally, Banks claims that the district court erred by failing to properly instruct the jury with regard to the drug quantities. Banks did not raise this issue before the district court; thus, we review for plain error. United States v. Rush-Richardson, 574 F.3d 906, 910 (8th Cir. 2009). To show a plain error Banks must prove "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [Banks'] substantial rights, which . . . means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Vanover, 630 F.3d 1108, 1119 (8th Cir. 2011) (per curiam) (third alteration in original) (quotation and internal quotations omitted). Banks states that because he did not join the conspiracy until the date of the reversal sale, the jury should have been required to find whether Banks "reasonably knew or should have known about [the] cocaine involved in the conspiracy prior to his joining the conspiracy." This argument, again, is premised upon the idea that Banks was not a member of the conspiracy until the reversal sale, when in fact there is evidence to the contrary. The jury was instructed to determine the drug quantity.[3] Because the jury instructions, taken as a whole, fairly and adequately submitted the issues to the jury, we find no plain error. United States v. Tyerman, 701 F.3d 552, 562 n.5 (8th Cir. 2012).

### III. CONCLUSION

We affirm.

_____

---

[3]The instruction stated, "Do you unanimously agree, by proof beyond a reasonable doubt, that the quantity of a mixture and substance containing a detectable amount of cocaine which was the subject of the possession with intent to distribute by the defendant was 5,000 grams (5 kilograms) or more?"